[Cite as *Koons v. Ozzy's Cash & Go Auto, L.L.C.*, 2021-Ohio-3337.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| DYLAN J. KOONS, et al., | : | |
| | : | Case No. 20CA3919 |
| Plaintiffs-Appellees, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| OZZY'S CASH AND GO AUTO, LLC, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 09/16/21** |

<u>APPEARANCES:</u>

Ozzy's Cash and Go Auto, LLC, Pro Se[1], Appellant.

Mark J. Cardosi, Southeastern Ohio Legal Services, Portsmouth, Ohio for Appellees.

Wilkin, J.

{¶1} This is an appeal from a Scioto County Court of Common Pleas judgment that found appellant, Ozzy's Cash and Go Auto, LLC ("Ozzy's), liable to Dylan J. Koons and Tiffany Koons ("the Koons") for damages caused by its breach of warranties on two automobiles purchased by the Koons. Ozzy's asserts a single assignment of error: the court erred in not determining the proper measure of damages for a breach of an implied warranty for the sale of personal property. After reviewing Ozzy's arguments, the applicable law, and the record, we overrule Ozzy's sole assignment of error, and affirm the trial court's judgment in favor of the Koons.

---

[1] Appellant's brief in this matter was filed by retained counsel prior to disciplinary action by the Supreme Court of Ohio.

BACKGROUND

{¶2} In April 2018, the Koons purchased a 2007 Hummer H3 SUV and a 2010 Chevrolet Traverse from Ozzy's. Including tax, the price of the Hummer was $10,851.08, but the Koons were credited $1,500 for a trade-in, and they made a $2,000 down payment. The Koons also purchased "gap protection" for $576, an "extended warranty" for $1,989.00, and paid $33.50 to license and register the Hummer. The Koons financed the balance of $9,949.58 at a 22.99 annual percentage interest rate, which resulted in 51 monthly payments of $307.40.

{¶3} Including tax, the purchase price of the Traverse was $15,532.38, but the Koons were credited $3,400 for a trade-in. The Koons also purchased an "extended warranty" for $1,736.00, and paid $33.50 to license and register the Traverse. The Koons financed the balance of $13,901.88, at a 22.99 annual percentage interest rate, which resulted in 54 monthly payments of $415.43.

{¶4} The day after their purchase, the Koons had "severe mechanical issues" with the Traverse, causing it to be inoperable; it got stuck in second gear and the power steering failed. The Koons returned the vehicle to Ozzy's, and it was eventually taken to Tim Short Auto to be repaired. After 3 ½ months, the Traverse was returned to the Koons, but the power steering still did not work. The Koons have driven the Traverse a total of 358 miles since the date of its purchase.

{¶5} About a week-and-a-half after the Koons purchased the Hummer, its transmission locked-up. Ozzy's eventually towed the Hummer to Tim Short Auto

for repair. After 3 ½ months, it was returned to the Koons and was functional, but it continued to leak fluid from the transmission. The Koons have driven the Hummer a total of 3,485 miles since the date of its purchase.

{¶6} Approximately three weeks after they purchased the vehicles, the Koons asked Ozzy's to rescind the purchase agreements for both vehicles. However, Ozzy's refused stating that the Koons would have to wait 30 days " 'for the warranty to kick in.' "

{¶7} The Koons filed a five-count complaint against Ozzy's alleging (1) breach of contract and breach of expressed and implied warranties, (2) violation of the Consumer Sales Practices Act, (3) revocation of acceptance of the purchase agreements, (4) violation of the Magnuson Moss Warranty Act, and (5) common law duties, fraud and misrepresentation. The Koons subsequently amended their complaint adding the Credit Acceptance Corporation (CAC) as a defendant, which moved to arbitrate their claims. However, before the trial court resolved CAC's motion, the Koons dismissed CAC as a party with prejudice.

{¶8} The Koons' remaining claims against Ozzy's were addressed in a bench trial. After considering the evidence presented by the parties, the trial court issued a decision and entry that included findings of fact and conclusions of law. The court found that the Koons failed to prove a violation of the Consumer Sales Practices Act, or common law fraud or misrepresentation. The court further found that the "as is" clauses in both automobile purchase agreements were contingent upon the Koons *not* purchasing extended warranties. Because the Koons purchased extended warranties for both vehicles, the court found that

the "as is" clauses were negated, and consequently both vehicles were covered under implied warranties, "including the duty to act in good faith, as to those warranties." The court found that Ozzy's violated those warranties. The court also found a violation of the Magnuson Moss Act, which provides federal rights that permit enforcement of state law warranty violations.

{¶9} Applying R.C. 1302.66, the court found that "significant mechanical problems" caused both vehicles to be "non-conforming" goods, that qualified the Koons to revoke their acceptance of both purchase agreements. The court concluded that Ozzy's "put[ing] off" the Koons' efforts to revoke the agreements caused them to incur $13,405.38 in damages. Ozzy's appeals this judgment, regarding the damage award.

ASSIGNMENT OF ERROR

THE COURT ERRED IN NOT DETERMINING THE PROPER
MEASURE OF DAMAGES FOR A BREACH OF AN IMPLIED
WARRANTY FOR THE SALE OF PERSONAL PROPERTY

{¶10} Ozzy's argues that the trial court erred in awarding the Koons $13,405.38 in damages. Ozzy's asserts that the trial court was required to calculate the Koons' damages pursuant to R.C. 1302.88(B). This provision provides the measure of damages for breach of a warranty, which "is the difference at the time of acceptance between the value of the goods accepted and the value they would have been as warrantied," absent special circumstances under R.C. 1302.88(B). In support of this proposition, Ozzy's cites *Eckstein v. Cummins*, 46 Ohio App. 2d 192, 193-96, 347 N.E.2d 549 (6th Dist.1975) and *Goddard v. General Motors*, 60 Ohio St.2d 41, 396 N.E.2d 761

(1979). Ozzy's argues that because there is no evidence showing the difference in value as set forth under R.C. 1302.88(B), the Koons' "claim should be dismissed."

**{¶11}** In response, the Koons do not address Ozzy's assertion that the trial court erroneously failed to apply R.C. 1302.88(B) in determining their damages. Instead, the Koons claim that if a trial court determines that rescission of a contract is justified, the court has discretion to fashion a decree that will return the parties to their respective position they occupied before they entered the contract, citing *Hubbard v. AASE Sales, LLC*, 2018-Ohio-2363, 104 N.E.3d 1027, ¶ 59 (5th Dist.). The Koons argue that the $13,405.38 damages award placed both parties in the position that they occupied before the contract, i.e., Ozzy's paid back the money that Koons made toward the vehicles. The Koons also assert that the $13,405.38 is supported in the record pursuant to the purchase agreements. Therefore, the Koons maintain that we should affirm the trial court's judgment.

Law and Analysis

1. Standard of Review

**{¶12}** When a party "challenges the trial court's choice or application of law, our review is de novo." *Hampton v. Lively*, 2020-Ohio-4713, 159 N.E.3d 810, ¶ 13 (4th Dist.), citing *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010-Ohio-5293, ¶ 21. This means that in our review, we afford the trial court no deference in determining what statutory provision applies. *See State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, ¶ 50 (4th Dist.), citing *State v. Sufronko*,

105 Ohio App.3d 504, 664 N.E.2d 596 (4th Dist.1995). We apply a de novo review of Ozzy's assertion that the trial court was required to apply R.C. 1302.88(B) to calculate the Koons' damages.

{¶13} To the extent that Ozzy's also argues that the trial court's award of damages was speculative, a "plaintiff must show its entitlement to damages in an amount ascertainable with reasonable certainty." *Bevens v. Wooten Landscaping, Inc.*, 4th Dist. Pike No. 11CA819, 2012-Ohio-5137, ¶ 16, citing *Allied Erecting & Dismantling Co., Inc. v. Youngstown,* 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, ¶ 64 (7th Dist.); *Interstate Gas Supply, Inc. v. Calex Corp.,* 10th Dist. Franklin No. 04AP-980, 2006-Ohio-638, ¶ 59. "Generally, we will uphold a trial court's judgment as long as the manifest weight of the evidence supports it—that is, as long as some competent and credible evidence supports it." *Bevens* at ¶ 12, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. Therefore, a damage award "should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment." *Knox v. Ludwick*, 4th Dist. Ross No. 00CA2569, 2001-Ohio-2604, ¶ 3, citing *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). And, "[f]actual findings of the trial court are to be given a great amount of deference because the trial court is in a better position 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

2.  Analysis

**{¶14}** We begin by recognizing that the trial court concluded that Ozzy's breached implied warranties pertaining to the Koons' vehicles, and that the Koons properly revoked the acceptance of the purchase agreements for both vehicles under R.C. 1302.66.  These holdings are not disputed in Ozzy's appeal.  Rather, Ozzy's contends that the trial court erred in not applying R.C. 1302.88(B) when it calculated the Koons' damages for revocation.  We will therefore adopt the trial court's finding that the Koons revoked the purchase agreements and solely address the appropriate calculation of damages.

**{¶15}** "Since the adoption of Article 2 of the Uniform Commercial Code in 1962, the law in Ohio governing contracts for the sale of goods has been codified in R.C. Chapter 1302."  *Hughes v. Al Green, Inc.*, 65 Ohio St. 2d 110, 111, 418 N.E.2d 1355 (1981).  Therefore, when a buyer's "action is grounded upon what is in essence an alleged breach of a contract for the sale of a motor vehicle, 'goods' as defined in R.C. 1302.1(A)(8), resolution of this dispute must be guided by the provisions of R.C. Chapter 1302, unless superseded by other statutory provisions."  *Id.* (footnotes omitted).  R.C. 1302.85 states:

> (A) Where the seller fails to make delivery or repudiates or *the buyer* rightfully rejects or *justifiably revokes acceptance* then with respect to any goods involved, * * * the buyer may cancel and whether or not he has done so may *in addition to recovering so much of the price as has been paid*[.]  (Emphasis added.)

**{¶16}** The Eighth District Court of Appeals has addressed the calculation of damages for the breach of warranties where the buyer properly revoked its

acceptance of an automobile in *Arrow Int'l, Inc., v. Rolls-Royce Motors, Inc.*, 8th Dist. Cuyahoga Nos. 50305, 50341, 1986 WL 4665 (April 17, 1986). Similar to the instant case, the defendant in *Arrow Int'l* argued that "the proper measure of damages * * * is the difference between the value of the goods accepted and the value of the car had it been as warrantied," pursuant to R.C. 1302.88. *Id.* at * 9. In rejecting this argument, the court of appeals reasoned that "[r]evocation of acceptance and recovery of damages for breach of warranty are two distinct remedies under the Uniform Commercial Code. While the buyer may pursue either remedy or both, each is treated in a different section of the Code and offers a separate form of relief." *Id.* Because the trial court in *Arrow Int'l* found that the buyer properly revoked acceptance of the automobile, the court found that "the 'value-received' basis for damages under R.C. 1302.88 inapplicable *where acceptance of the goods has been revoked.*" (Emphasis added.) *Id.*, citing *Frontier Mobile Home Sales, Inc.* v. *Trigleth*, 505 S.W.2d 516 (Ark.1974); *Gawlick v. American Builders Supply, Inc.,* 519 P.2d 313 (N.M.App.1974). Instead, the court of appeals held that "[a] buyer who justifiably revokes acceptance of goods under R.C. 1302.66 is entitled to the purchase price paid in addition to incidental or consequential damages" under R.C. 1302.85 and 1302.89, respectively. *Id.*

{¶17} The Sixth District Court of Appeals has also addressed the proper measure of damages for the breach of a warranty where the buyer revoked a purchase agreement for goods. *Ball Works, Inc. v. Lima Lawnmower, Inc.,* 6th Dist. Lucas No. L-96-237, 1997 WL 362464 (June 27, 1997). In *Ball Works*, the trial court concluded that the seller of a lawnmower breached an implied warranty

of fitness for a particular purpose and that the buyer properly revoked the purchase agreement under R.C. 1302.66. *Id.* at * 3. Then "[t]he trial court found that, pursuant to R.C. 1302.88 and .89, due to the breach, [the buyer] is entitled to judgment and damages totaling the $1,965.20 already paid." *Id.*

**{¶18}** On appeal, the seller argued that the trial court erred in awarding the buyer the return of the purchase price paid, relying on *Eckstein v. Cummins*, 41 Ohio App.2d 1, 321 N.E.2d 897 (6th Dist.1974), and *Eckstein v. Cummins*, 46 Ohio App.2d 192, 347 N.E.2d 549 (6th Dist.1975). *Id.* at * 6. The court in *Ball Works* found that the *Eckstein* case was distinguishable because the buyer in *Eckstein* did not revoke the purchase agreement, but the buyer in *Ball Works* did. *Id.* Therefore, similar to the decision in *Arrow Int'l,* the court in *Ball Works* concluded that "the appropriate measure of damages is set forth in R.C. 1302.85, not R.C. 1302.88 and .89." *Id.* The court noted that

> [a]lthough the trial court stated it was awarding damages pursuant to R.C. 1302.88 and .89, its computations were consistent with the measure of damages set forth in R.C. 1302.85. Accordingly, this court finds that the trial court was correct in finding that Ball Works is entitled to recover as much of the purchase price as has already been paid.

*Id.*, citing R.C. 1302.85.

**{¶19}** Nevertheless, Ozzy's cites *Eckstein,* 46 Ohio App. 2d 192, 347 N.E.2d 549 and *Goddard*, 60 Ohio St.2d 41, 396 N.E.2d 761 in support of the proposition that the trial court erred in not relying on R.C. 1302.88 to calculate the Koons' damages after revocation of the purchase agreements. However, as made clear in *Ball Works*, *Eckstein* is distinguishable from this case. In *Eckstein*, the buyer did not revoke the purchase agreement, so his damages were

controlled by R.C. 1302.88, unlike the instant case, in which the Koons did revoke the purchase agreements; therefore, their damages are calculated under 1302.85.

**{¶20}** *Goddard* is similarly unsupportive of Ozzy's argument.  In *Goddard* the buyer of a vehicle successfully sued the manufacturer and seller for breach of an express warranty.  *Goddard* at 41-43.  *Goddard* holds that "Where a new car express warranty limits a buyer's remedy to repair and replacement of defective parts, but the new car is so riddled with defects that the limited remedy of repair and replacement fails its essential purpose, the buyer may institute an action to recover damages for breach of warranty under R.C. 1302.88(B)."  *Id.* at syllabus. However, unlike the present case, there was no mention that the buyer revoked or even attempted to revoke the purchase agreement for the automobile. Consequently, we do not find *Goddard* instructive in addressing the proper calculation of damages due to a breach of warranty, *when the buyer has revoked the purchase agreement*.

**{¶21}** We agree with *Ball Works* and *Arrow Int'l* that a trial court may award damages under R.C. 1302.85 for the purchase price paid where the buyer has revoked the purchase agreement for goods, which in this case involved two vehicles.  Both decisions are consistent with the plain language of R.C. 1302.85, and awarding a buyer the monies paid under these circumstances is consistent with the purpose of rescission, which is "to restore the parties to their original positions as if the contract had never been formed."  *Bell v. Turner*, 4th Dist. Highland Nos. 12CA14, 12CA15, 2013-Ohio-1323, ¶ 22.  Consequently, we find

Ozzy's argument that the trial court was required to calculate the Koons'

damages after revocation of the purchase agreements under R.C. 1302.88(B)

lacking in merit. Despite this conclusion, our analysis is not yet complete.

{¶22} The trial court did not cite R.C. 1302.85, or any other authority, in

calculating the Koons' $13,405.38-damage award, nor did it indicate how it

arrived at that particular amount. However, a review of the purchase agreements

for the vehicles herein reveals the following.

{¶23} The price of the Hummer was $10,851.08. After making a $2,000

down payment, receiving a $1,500 credit for a trade-in, purchasing gap coverage

for $576, purchasing an extended service warranty for $1,989.00, and paying

$33.50 to license and register the vehicle, there was $9,949.58 left to be

financed. Financing $9,949.58 at a 22.9% annual percentage rate, resulted in 51

monthly payments of $307.40 per month.

{¶24} The price of the Traverse was $15,532.38. After receiving a $3,400

credit for a trade-in, purchasing an extended service warranty for $1,736.00, and

paying $33.50 to license and register the vehicle, there was $13,901.88 that

remained to be financed. Financing $13,901.88 at a 22.9 annual percentage

rate, resulted in 54 monthly payments of $415.42.

{¶25} Mr. Koons testified that he made nine monthly payments on both

vehicles for a total of $6,505.38. The sum of the down payment ($2,000), both

trade-in credits ($1,500 and $ 3,400), and the nine months of payments for both

vehicles ($6,505.38), totals $13,405.38. This is the exact amount of damages

that the trial court awarded to Koons, and essentially represents the amount of "the purchase price paid" by the Koons. Therefore, we find that the damage award is supported by "some evidence" and is "ascertainable with reasonable certainty." And, finally, similar to the court's reasoning in *Ball Works*, although the trial court herein did not specifically cite R.C. 1302.85 in its decision, because the damages it awarded to the Koons are consistent with that provision (i.e., they recovered monies paid on the vehicles), we find that the trial court did not err in calculating the Koons' damage award. *See Ball Works*, 1997 WL 362464, at *6. Therefore, we overrule Ozzy's assignment of error.

## CONCLUSION

{¶26} Having overruled Ozzy's sole assignment of error, we affirm the trial court's decision and entry in favor of the Koons.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**